Good morning, Your Honors, and may it please the Court. I'm a Freeman for Appellant Ronald Young, and I'd like to reserve two minutes for rebuttal. This is a classic excessive force case. Even though Mr. Young was a non-violent misdemeanant who posed no threat and was neither fleeing nor resisting arrest, Officers Keyes and Rintemaki grabbed Mr. Young's Young was taken away to the hospital by ambulance. There are two straightforward issues on appeal. First, based on Young's allegations and the two corresponding videos, could Young prove any set of facts entitling him to relief for excessive force? And second, assuming he could, was the underlying law clearly established? And the answer to both questions is yes. This Court should reverse the District Court's grant of the motion to dismiss. And I'll start with the Graham v. Conner factors, all of which favor Mr. Young here. First, Mr. Young was not an immediate threat. He wasn't a threat of any kind. He was non-violent. He made no physical contact with the officers. He didn't advance on them. It was a two-to-one situation with another officer in backup in the squad car. Counsel, that seems to be the case for the first 15 minutes of the encounter, but then things changed. Are you disputing the authenticity of the video in any respect? No, Your Honor, we're not. The pleadings embrace the videos. It does seem to me that for the first 15 minutes, he was perfectly calm and cooperative, but then he became belligerent, and the video seems to show that he was resisting being cuffed. I agree, Your Honor. There is a shift after the first 15 minutes of the video, and that's where there becomes some confusion about the nature of the third test that Officers Keyes and Rintemaki wanted to administer. I think that at the very least, Your Honor, there are questions of fact about what a reasonable officer would think of Mr. Young's conduct in those moments. But even assuming an officer would see him as belligerent, this Court has held time and time again that simply because someone is belligerent, rude, vituperative, even churlish, that's not enough in itself to justify a use of force. And to Your Honor's second point around the resistance to the cuffing, I don't think Mr. Young had any sense that he was being placed under arrest. There were no verbal warnings that were given, and I think the video is very clear that just as Officer Keyes says, put your hands behind your back, at that same moment, he reaches out and grabs Mr. Young's arms. So this isn't like the trove of cases that my colleague on the other side has cited where there were repeated police commands to sit, to place arms behind the back, to exit the squad car. Nothing like that happened here. Mr. Young, I think, was confused, and a reasonable officer would have believed that he was, or at least a reasonable juror could have reached that conclusion. And I think that's true about his conduct through the remainder of the force encounter, that there are fact questions inherent in the video. And where there's inconclusive video, this Court has held in multiple cases, it's not a case that can be resolved as a matter of law at the 12B6 stage. And there's a reason, Your Honor, that virtually every case cited to you in the papers, if not actually every case, was resolved at summary judgment and not at the pleading stage. And so I'll return to the Graham v. Connor factors. Certainly there are fact questions as to the active resistance point. I think there can be no dispute that Mr. Young wasn't fleeing. He was just a misdemeanant who wasn't in command of a running vehicle. He was at the foot of his car. He certainly didn't have an opportunity to take command of his car again. And even with the video footage, the Court is bound to accept all of Mr. Young's allegations, absent blatant contradiction with the footage. And I don't see any blatant contradictions here. I think that standard, if you look to the case law, was designed to encompass scenarios where citizens denied making any statements to the police and footage reflected that there were, in fact, verbal exchanges. Here, the pleadings in the video are certainly consistent enough that the Court needs to take all of Mr. Young's allegations as true. And Mr. Young can't be deprived of his right to litigate this case. Depositions would shed light on significant aspects of each officer's perspective, which goes directly to objective reasonableness analysis. And a jury gets to interpret Mr. Young's conduct and his physical movements to assess all of the gram factors. And in my final minutes, Your Honor, I'll turn just to the clearly established prong of the qualified immunity test. Counsel, I do have one other question. Yes, Judge. If we were to disagree with the district court that the amount of force used was only de minimis, would that change the result? It would, Your Honor, because if the force used wasn't de minimis, then you would move to the objective reasonableness analysis. I think you would then have to disagree with the second part of the district court's analysis, because he held first that the force was de minimis, but even if it wasn't, that the force was reasonable. So if you disagree at the first step, you would move to the second step. And I think the Court would hold and should hold that there are fact questions that preclude resolution of the objective reasonableness question on the pleadings. And I would say to Your Honors that I think it is clearly established that under the Brown case and the Montoya case read together, it was very clear as of New Year's Eve 2019 when this encounter occurred that a nonviolent misdemeanant not actively resisting arrest and not fleeing is a situation where you have the least justification to use any force at all, and certainly not the kind of force that was used here, which was a takedown with arms restrained. And it's very clear both as a matter of common sense and in this Court's case law that that kind of takedown can cause serious injury. Is there, does the video indisputably say or show where his arms are? There's a little bit of confusion once they start pulling his arms back. Were both in the cuffs? It seems like there was just one in the cuff, but one was pulled back. Do you think that that is still in dispute, or can you see that clearly from the video? My read of the video, Judge Kelly, is that there are no cuffs yet on Mr. Young when he is thrown face first to the ground, but both of his arms are restrained at his sides and behind his back by Mr. Keyes on his left, as you view the video, and by Officer Rintamaki on the right. So I think there can be no dispute that he couldn't do what we all do if we trip and fall forward, which is try to use our hands to brace ourselves and protect our face. There's no question Mr. Young couldn't do that. He ended up with facial lacerations, broken glasses. You can hear one of the officers on the video say, possible facial injury, and that there's a reason that a hospital was needed and that an ambulance was summoned to the scene. So whatever is inconclusive about the scuffle, and I think some of it is, again, crying out for fact finders to resolve those disputes, it's clear that Mr. Young couldn't use his hands. And in the Burnicle case, although it's different on the facts in many respects, the court was very clear about the kind of injury that can result from taking someone who there was already cuffed and dropping them onto their face without the ability to protect their hands. He ended up with multiple broken teeth. And I think it's largely a matter of luck that Mr. Young wasn't more severely injured. Your Honors, we are all aware and appreciative that the Fourth Amendment encompasses egregious kinds of police misconduct and violence. But I would say that this case is significant because this kind of garden variety interaction between civilians and police that happens tens of thousands of times a year, this is where we need the court's guidance. It simply can't be under the Fourth Amendment that civilians can be thrown face first to the ground with their arms restrained simply for having a disagreement about the nature of DUI investigations. There was no threat, there was no danger, and no reasonable officer could have concluded otherwise based on Mr. Young's behavior. So if there are no further questions, I'll reserve the remainder of my time. Thank you. Counsel, this is Jed Smith. Yes, Judge Smith. How is this case, other than the status of the case at the pleading stage, how does this differ from cases in our circuit like Ehlers where you have this kind of an encounter and a conclusion that qualified immunity did apply to officers' attempt to make an arrest? Judge Smith, I think this case is different from Ehlers and cases like it because in Ehlers there was already substantial noncompliance with arrest-related officer commands. So in the Ehlers case, most of Mr. Ehlers' family had been arrested, there was a brawl at a sports game, and Mr. Ehlers was actually walking away from the police officers back towards the civic center, and they said, stop, stop, twice, and he kept walking. He did not comply before any force was used. Here, on the other hand, as I said, the video shows a simultaneous grab of the arms and the statement, put your hands behind your back, by Officer Keys. No one said, you're under arrest. No one said, if you don't comply, we may have to use force. There was no warning and there was no noncompliance before the force was used. And that's true in all... Is there a requirement in our cases for warning? No, there's no requirement, Your Honor, but it is part of the totality of the circumstances analysis. And factually, there were warnings and there was noncompliance in Ehlers and other cases like it, where qualified immunity was found to exist. So I think the fact that the force and the attempted arrest, if that's indeed what was happening, were simultaneous in this case is enough to distinguish it and make qualified immunity inapplicable. Thank you, Your Honors. Thank you. Mr. Weiderholt? May it please the Court, Counsel. You know, I don't think this comes down to an arrest that was made and force used because of a simple disagreement. I think the video evidence is very clear. The Court has the body cam video from the officer, Officer Eric Keys, and also the dash cam video. So while I can appreciate that the body cam video does get pretty garbled at the point where Mr. Young is essentially grabbed by the officers and then taken to the ground in the median, if you look at the dash cam, that really clearly shows the context and from farther back and lets you see what's happening. And I agree with you, Judge Kelly, that it might be a little unclear as to exactly when he was being grabbed and if he had arms free. You can clearly see arms free. You can clearly see a struggle after he is grabbed by both officers. And then you can see them all go to the ground together. I know that this type of activity where they end up on the ground has been categorized as a takedown. I'm not sure it was an organized takedown. It was kind of everybody ended up on the ground. It was definitely a tussle. And I would also... Counsel, would you agree that our decision in Mitchell v. Kirchmeier would seem to indicate this was more than de minimis force? Judge, that's a good question. Mitchell v. Kirchmeier, I think, was protest cases up in North Dakota, if I recall correctly. Judge Grunder went through a fairly detailed analysis of what was de minimis and what wasn't. Yeah. And I know that Judge Traynor in this case held that it was de minimis force and then alternatively ruled in favor of the officers on the reasonableness of the conduct. Yeah, I'm not sure if it's de minimis or not de minimis based on the video and the complaint, if the force itself was de minimis or if the injuries were de minimis. You can certainly look at the body cam video. Yeah, I wasn't referring to the injuries, but rather the amount of force used. Yeah, I don't know that the force here actually was de minimis, Your Honor, when a suspect is grabbed and then taken to the ground. Assuming the facts in the light most favorable to the plaintiff that he was indeed taken to the ground or thrown to the ground by officers, I don't think that would be de minimis force, like handcuffs that are applied or being placed in a squad car and maybe a knee goes in the back of the suspect, as in one of the cases from the Eighth Circuit. So, yeah, I don't believe the force itself would be de minimis. So I know that the judge ruled that way, but he had a backup plan, I think, and he looked at the reasonableness of the encounter and ruled the way he did in the alternative fashion, which I completely agree with. Some of the other things that counsel said that I take issue with is the no warnings were given, and I agree that warnings are not a requirement under Eighth Circuit precedents. There are many cases where there are warnings, and the warnings are taken into account when the court is looking at the totality of the circumstances. Here, I think there were warnings. Is a warning to arrest required? Hey, I'm going to grab you, buddy, and I'm going to arrest you now. I'm going to put cuffs on you now. That's not a requirement of the law, and you can see why that would probably not work and would lead to even worse confrontations. Why isn't in viewing this in the light most favorable to Mr. Young, why isn't this just him being argumentative? At some point, I think there's been discussion that it kind of turned, and he got a little more frustrated with what was going on, but frustration or strong words or talking back isn't enough to justify force. Would you agree? Typically, I would agree, Your Honor. We have some case law that shows that the disobeying officers can be viewed as at least passive resistance. Right, so disobeying would be something different than just disagreeing or kind of talking back or asking questions, or am I not getting your distinction? I fully agree, and there's a lot of case law in the circuit about the belligerent conduct and the churlishness and not being nice back to the officer. That is not grounds. So where did this, in your view, as an objective matter, where did it cross the line from disagreement, sort of talking back, to something that would warrant force? Yeah, if you watch the video, and really the body cam is 15 minutes to 16 minutes and 45 seconds, and the dash cam is 17 minutes to 17 minutes, 45 seconds, it's in that time and he tells Mr. Young that there's one more test he needs to take, and his demeanor clearly changed at that point. He was clearly, prior to that, yeah, he was not compliant. He was not following the commands to do the tests correctly. He seemed to have a fairly good sense of humor through that. I mean, he was laughing and joking a bit, but it really changed at that point, and I think the officers got that at that point. They're on the side of the road. The cars continue to pass by. It's nighttime. So you're describing... Yeah, it really changed right there. You're talking about a change in demeanor. Is that enough? Well, I think it is here when you're on the side of the road, and this individual, Mr. Young, had not been patted down for weapons. He had not complied with really pretty basic, you know, the different tests the officers were putting him through, and then he started to move. When you say not comply, are you saying he refused to do, because I saw it, and maybe he wasn't doing it quite correctly, but I thought, at least up until that point, he was complying with the request to try to do the various tests that they put him through. I think, Your Honor, if you go back and watch the video for the full beginning part of the arrest, he's told several times not to do certain things or to come stand over here, and it takes two or three times of the officers telling him to do X, Y, or Z for him to finally do it, and there is also that where he couldn't do the test, he couldn't do the heel-to-toe, and then he started doing the heel-to-toe backwards. Again, he's, you know, using some humor there, but he was not really very compliant, plus he was not able to do the tests. At what point, wasn't there a point at which the officer said he could decline further testing? He did. He's asking him, do you decline to do the test or not? He had to read the test. He could decline. Is that one of the points where you're saying he's becoming noncompliant? That was right in there. That was right in the middle of about the 30 to 45-second time period where he really changed, and he started to move more quickly, move towards the car, turn his body, moving his arms, and at that point, he clearly, you know, started to yell at the officers and asked how old the officer was, which the officer thought was not relevant to the inquiry, but it seemed at least to a reasonable officer on the side of the road with a DUI stop, suspect has not been checked for weapons. His attitude and his actions are getting a little bit unpredictable. At that point, I think the decision was made, and the officer, I think, did warn him. He said, I'm done arguing with you, Ronald, and right away after that, they grabbed his arms, and then if you flashback or go back to the squad video, you can see exactly what's happening, and there is a tussle, and they end up on the ground. I don't know if his arms are under him. I don't think he's handcuffed at that point. In fact, I don't think he's handcuffed until he's on the ground, but all of that is unclear, but his arms are free, and things are happening, and there is an absolute tussle with the officers, like wrestling while they're standing. Counsel, I'm afraid I'm getting a little bit more confused than I was at the beginning as to what the government's position is as to when use of force was justified here. Well, use of force was justified, Your Honor, as soon as Mr. Young was acting unpredictably at the back of the squad car and making it clear to them that he was not going to comply with them and not going to essentially play ball anymore, and they grabbed his arms at that point to effectuate a DUI arrest, which they were entitled to do and which I believe Mr. Young's counsel... Do you believe that the video shows he was resisting arrest? I believe it does show it, especially when you look back from the squad video at that time frame. I think it shows active resisting of arrest. So if we look at the cases that opposing counsel has urged the court to look at, they stand for the proposition of nonviolent misdemeanors that are not fleeing or resisting and not a safety risk. That's the Brown case, the Montoya case, the Bernickel case, the Bower case. None of those cases are even close to what happened here on the side of the road on New Year's Eve in North Dakota in 2019. I would urge the court to take a look at the Ehlers case, the Kelsey case. We've got Murphy v. Englehart, which was also a drunk driving case, very much like this case. And all of those cases ruled in favor of the officers and found the conduct was not unreasonable and they were shielded by qualified immunity. And I see I'm just about out of time. Any questions? Thank you. Just a brief point or two, Your Honors. The story that Mr. Wederholt is telling about what he saw in the video, I think, is a compelling one, but it's one that belongs at a trial before the jury box. Inferences need to be drawn in the officer's favor in the opposite direction of where they must be drawn at the 12 v. 6 stage in order to credit the notion that Mr. Young was a threat, that there was a danger to the officers who, I'll note, were walking in and out of the road themselves because there weren't any other options. There weren't actually that many cars going by. I think the punchline of this case, and it's clear from the footage and the allegations, which must be taken as true, that there was no actual disobedience here, just disagreement. And to the extent reasonable minds could differ on that point, the disobedience was not of the type that we've seen in other cases. Not stopping your heel-toe test when an officer tells you is very different than not putting your hands behind your back or not complying with an order to stay in the squad car like in the Murphy v. Englehart case. This is a case that set forth a proper claim for excessive force and it should be resolved by fact finders. Thank you, Your Honors. Thank you, counsel. Thank you both.